# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| MARCIA A. LURENSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-0890 (ABJ) |
| | ) | |
| JON WELLINGHOFF, Chairman, | ) | |
| Federal Energy Regulatory Commission | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

In this action, *pro se* plaintiff Marcia A. Lurensky has sued defendant Jon Wellinghoff, in his capacity as Chairman of the Federal Energy Regulatory Commission ("FERC"), for a second time, alleging that the agency discriminated against her based on her religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); based on her disability, in violation of the Rehabilitation Act, 29 U.S.C. § 794(a), and based on her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(a) ("ADEA").[1] Plaintiff alleges that defendant took a number of distinct retaliatory and discriminatory steps, each of which was due to one of her protected characteristics or her past EEO activity. The complaint is primarily based on FERC's handling of the requests for leave that plaintiff submitted after she fractured her foot in the summer of 2005, and on a series of actions that took place after FERC reassigned her from the Energy Projects Section of the Office of the General Counsel to the Office of Administrative Litigation at FERC in November of that year.

---

1   Plaintiff's first lawsuit against the agency, *Lurensky v. Wellinghoff*, 1:08-cv-1199, was filed on July 14, 2008.

Defendant has moved to dismiss, and plaintiff has since moved for leave to amend her complaint.  Because plaintiff's proposed amendments would be futile, and because plaintiff has failed to state a claim upon which relief can be granted, the Court denies leave to amend, grants defendant's motion to dismiss, and dismisses this action.

## BACKGROUND

Plaintiff is an approximately 67-year-old[2] woman, employed as a GS-15 attorney at the Federal Energy Regulatory Commission in Washington, D.C.  Compl. [Dkt. # 1] ¶ 3.  Plaintiff states that she is disabled, and she alleges that she has provided FERC with medical documentation of her disabilities.  Compl. ¶ 6.  She alleges that from 1990 until 2003 when she first became an EEO complainant, her performance reviews were "Highly Effective," or higher.  Compl. ¶ 7.

The complaint itemizes a number of events and actions, beginning in 2005, for which plaintiff is seeking redress.   On July 20, 2005, plaintiff fell as she approached FERC's Headquarters Building and fractured her right foot.  Compl. ¶ 9.  Plaintiff alleges that before that happened, she had already voiced her dissatisfaction with the agency's leave policies, including the instruction "that advanced annual leave could not be used for medical purposes."  Compl. ¶ 9.  But in this action, she complains that "[b]y memorandum dated July 27, 2005, Plaintiff was told that she would not be granted advanced leave for other than medical reasons."  Compl. ¶ 9; Proposed Am. Compl. [Dkt. # 10-2] ¶ 10.  *See also* Decl. of Marcia A. Lurensky, Ex. 1 to Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 7-2] ("Pl.'s Decl.") ¶¶ 11–13; 18–22.[3]  And according to

---

2       Plaintiff's June 2012 complaint describes her as 64 years old.

3       While the issue to be resolved is the sufficiency of the complaint, the Court has consulted the Declaration plaintiff submitted in opposition to the motion to shed light on allegations that are confusing or unclear. While the complaint mentions the use of advanced annual leave, the Declaration adds that the agency also informed plaintiff that she would not be granted advanced sick leave.

the complaint, FERC also denied plaintiff's request to work from home as she recovered.  Compl.

¶ 12; Pl.'s Decl. ¶ 19.

In August 2005, plaintiff received a "Fully Satisfactory" performance appraisal rating,

which plaintiff asserts "does not reflect the quality, or credit her for the substance, of the work she

performed."  Compl. ¶ 10.

On the day after Thanksgiving in 2005, plaintiff was reassigned from her "sedentary" job

at FERC's Office of the General Counsel to FERC's Office of Administrative Litigation (OAL).

Compl. ¶ 10.   OAL attorneys are assigned to perform duties in hearing rooms in FERC's

Headquarters Building, which have fluorescent lighting.  *Id.*  Plaintiff adds in her Declaration that

FERC reassigned her to OAL "although having information that aspects of duties in OAL

exacerbate [her] disabilities, including exposure to fluorescent lighting in FERC's hearing rooms."

Pl.'s Decl. ¶ 24.

Plaintiff then turns to a period three years later and alleges that FERC delayed in

responding when she requested advanced sick leave in September and October 2008.  Compl. ¶ 11.

FERC required plaintiff to submit additional medical documentation in support of her request, and

denied it in December 2008.

Also in December 2008, FERC denied plaintiff's request that the agency remove a

Christmas garland off of a handrail in the lobby of the Headquarters Building at FERC as an

accommodation for her disabilities.  Compl. ¶ 12.

On February 25, 2009, plaintiff filed a formal complaint alleging disability discrimination,

hostile work environment, and retaliation arising out of the Agency's delayed response to her

inquiries about advanced sick leave, and its decision not to remove the garland from the lobby.

Ex. D. to Def.'s Mot. to Dismiss [Dkt. #  6-4].

In May 2010, FERC relocated OAL to the building located at 1110 First Street, N.E., which plaintiff alleges did not have the same disability access, amenities, and security as her prior duty station.  Compl. ¶ 13.  According to plaintiff, the equipment at the new duty station was on higher, non-accessible countertops, and office supplies were kept in high cabinets above counters, which plaintiff could not access, even with a stepstool.  *Id.*  The new duty station had a fitness center, but it did not have a Health Unit or provide adequate transportation to the health unit at plaintiff's former duty station.  Compl. ¶ 14.[4]  The complaint does not specify whether this move alleviated the fluorescent light problem posed by the previous location.

On July 2, 2010, plaintiff filed a formal complaint alleging age and disability discrimination arising from "some 80 issues," including the issues surrounding the relocation.  Ex. E. to Def.'s Mot. to Dismiss [Dkt. # 6-5].

Also in 2010, plaintiff complained that the Information Technology department failed to facilitate her ability to access information about her leave and about the facilities and security at the new building.  Compl. ¶ 15.  Plaintiff filed a formal EEO complaint on October 12, 2010, based on those and other allegations.  Ex. F to Def.'s Mot. to Dismiss [Dkt. # 6-6].

Plaintiff alleges that she learned in 2011 that her sensitive personal information could be found on an unrestricted FERC shared network drive, available to all FERC employees.  Compl. ¶ 16.  On April 25, 2011, plaintiff filed another formal complaint alleging age and disability discrimination, hostile work environment, and retaliation based on the disclosure of this information and the agency's failure to respond to her concerns.  Ex. G. to Def.'s Mot. to Dismiss [Dkt. # 6-7].

---

4       The Court notes that this action has been pending for some time, and that plaintiff is currently working in a different environment and has a variable work schedule.  *See* Hr'g Tr. [Dkt. # 14] at 6–7.

In early 2011, FERC denied plaintiff's request to telework for two specific days as an accommodation for her disabilities.  Compl. ¶ 18.  Plaintiff also requested that her coworkers undergo disability sensitivity training, but FERC never provided the training.  Compl. ¶ 19.  In February 2011, plaintiff filed another complaint alleging age and disability discrimination, hostile work environment, and retaliation arising out of those denials.  Ex. H to Def.'s Mot. to Dismiss [Dkt. # 6-8].

Plaintiff filed the instant *pro se* complaint on June 4, 2012.  Her complaint does not allege a specific cause of action, but rather, it sets forth the facts described above and concludes:

> As a direct and proximate result of defendant's intentional discrimination, retaliation, and hostile work environment as set forth above, plaintiff has suffered and will continue to suffer embarrassment, humiliation, emotional distress, and other special and general damages.

Compl. ¶ 20.[5]  Plaintiff requests that the Court permanently enjoin defendant from engaging in illegal acts, and asks for damages under Title VII, the Rehabilitation Act, and ADEA, including:

> [C]ompensatory damages, granting of accommodations, restoration of leave, removal of performance evaluation from plaintiff's record, mandatory disability sensitivity training to be provided to FERC employees, attorneys' fees and costs expended during the administrative processes, attorneys' fees, if any, and costs incurred in this case, cessation of discriminatory and retaliatory acts by the Agency against the [p]laintiff, and such other relief as the Court may deem just and proper.

Compl. Request for Relief.  At the time she filed her complaint, plaintiff filed a notice of related case referring to the pending 2008 employment discrimination action which was then assigned to a visiting judge, and this case was assigned to the same judge.

On August 6, 2012, defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mot. to Dismiss [Dkt. # 6] ("Def.'s MTD"); Mem. of P. & A. in Supp. of Def.'s

---

5    The proposed amended complaint is also devoid of separate counts or claims, and it concludes with a similar summary.  Proposed Am. Compl. ¶ 22.

MTD [Dkt. # 6-1] ("Def.'s MTD Mem."). Plaintiff opposed the motion on September 14, 2012, Pl.'s Opp. to Def.'s Mot. [Dkt. # 7] ("Pl.'s MTD Opp."); Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp. [Dkt. # 7-1] ("Pl.'s MTD Mem."), and defendant replied. Reply Mem. in Further Supp of Def.'s Mot. [Dkt. # 9] ("Def.'s MTD Reply").

About two weeks after the motion to dismiss was fully briefed, plaintiff moved for leave to amend her complaint. Pl.'s Opposed Mot. for Leave to File Her First Am. Compl. & Mem. in Supp. of Her Mot. [Dkt. # 10] ("Pl.'s Mot. for Leave"). Plaintiff's proposed amended complaint seeks to make three clarifications to her original complaint. Pl.'s Mot. for Leave at 2. First, plaintiff seeks to add language to allege that prior to the 2005 incident in which she fractured her foot, defendant had retaliated against her by revoking an existing accommodation that enabled her to work varying hours. *Id.*; *see also* Proposed Am. Compl. ¶¶ 9–10. She alleges that she fell on the morning of July 20, 2005 as she "tried to arrive at her duty station consistent with FERC's change in her duty hours." Proposed Am. Compl. ¶ 10; *see also* Pl.'s Decl. ¶ 18 ("On July 20, 2005 I fell on the First Street sidewalk on approaching the FERC building because of the ongoing discrimination, harassment, retaliation, hostile work environment, failure to be granted advanced leave, and resultant pressure and stress to arrive at work on time (at my new, earlier, arrival time – consistent with FERC's 2005 change of my duty hours)."). Second, plaintiff seeks to add clarification to her allegation that defendant reassigned plaintiff to OAL notwithstanding its knowledge of plaintiff's disabilities, and specifically, her "acknowledged need to avoid fluorescent light." Pl.'s Mot. for Leave at 2–3; *see also* Proposed Am. Compl. ¶ 11. Finally, plaintiff seeks to make clear that her complaint also incorporates a claim of discrimination related to her religion. Pl.'s Mot. for Leave at 3; *see also* Proposed Am. Compl. ¶ 21.

Defendant opposed plaintiff's motion for leave to amend her complaint on November 2, 2012, arguing that any amendment would be futile.  Def.'s Opp. to Pl.'s Mot for Leave [Dkt. # 11]. Plaintiff replied in support of her motion on November 13, 2012.  Pl.'s Reply to Def.'s Mot. for Leave Opp. [Dkt. # 12].  The case was reassigned to this Court on January 5, 2016.

## STANDARD OF REVIEW

### I.     Motion for Leave to Amend

When a party seeks to amend its pleading after a responsive pleading has been served, the Court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  When evaluating whether to grant leave to amend, however, the Court must consider these factors:  (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint.  *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Court may deny leave to amend based on futility if the proposed claims would not survive a motion to dismiss.  *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009), citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

### II.    Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider [her] filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).[6]

Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."

---

6     Though plaintiff is an experienced attorney, and despite the fact that a *pro se* attorney "is presumed to have a knowledge of the legal system and need less protections from the court," *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007), the Court construes plaintiff's filings liberally in light of her *pro se* status.

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Plaintiff's complaint does not enumerate specific causes of action, and it points to a number of discrete events that occurred over a five year time period.  The Proposed Amended Complaint begins with a heading:  "Disability, Age, Discrimination, Religion, Retaliation, Hostile Work Environment," but nowhere in her complaint does plaintiff specifically tie any of the actions she describes to any bias on the part of her employer against any particular protected characteristic or set of characteristics.  In an effort to construe plaintiff's pleading liberally, the Court will assess whether she has stated: a claim under Title VII for discrimination or hostile work environment based on her religion or gender; a claim under the ADEA for discrimination or hostile work environment based on her age; a claim under the Rehabilitation Act for discrimination or hostile work environment based on her disability; or a claim under any of those statutes for retaliation for protected activity.

Defendant has moved to dismiss on the grounds that some of plaintiff's claims are barred as duplicative of those raised in her previous suit, others are barred because plaintiff failed to administratively exhaust them, and the remainder should be dismissed because plaintiff failed to allege a materially adverse employment action.  Accepting all of plaintiff's allegations as true and resolving all inferences in her favor, *see Iqbal*, 556 U.S. at 678, the Court finds that plaintiff has failed to state a claim upon which relief can be granted in either her original complaint or her Proposed Amended Complaint, and so the case will be dismissed and the motion for leave to amend her complaint will be denied as futile.

## I.   Amendment of plaintiff's complaint to add a claim of religious discrimination would be futile

Plaintiff's Proposed Amended Complaint mentions religion in just two places.  She alleges generally, without specifying a time frame, that "[p]laintiff has [] complained about harassment in her work environment . . . including for accrual of religious compensatory time for observance of religious holidays."  Proposed Am. Compl. ¶ 9.  She also alleges that "[p]laintiff has been harmed by [d]efendant's actions of retaliation, and discrimination against her, including because of her disabilities, age, and religion, that has been ongoing and pervasive in [d]efendant's actions against her."  Proposed Am. Compl. ¶ 21.  Those conclusory statements are insufficient to give rise to a cause of action.

Plaintiff's reply in support of her effort to file the Proposed Amended Complaint suggests that in 2005, the agency did not properly credit her for compensatory time that she worked before the Jewish Holidays.  *See* Pl.'s Mot. to Amend Reply at 2–3.  But there are no facts set forth in the complaint concerning the use of leave for religious observance in 2005.  And even in the reply, she merely points to allegations from 2003:

> Allegations before the Court in [p]laintiff's 2008 Complaint . . . do not include the agency's subsequent actions about religious compensatory time about which she complains [sic].  Paragraph 19 of [p]laintiff's 2008 Amended Complaint in Case No. 1:08-cv-01199 . . . specifically references [d]efendant denying [p]laintiff – in 2003 – credit for time worked for accrual of religious compensatory time for the Jewish High Holy Days.

Pl.'s Mot. for Leave Reply at 2–3.  Plaintiff cannot relitigate the 2003 incident that was resolved in the previous action, and her hint in a pleading that the problem has recurred is insufficient to state a new cause of action, even if one considers all of the allegations in this *pro se* plaintiff's pleadings when assessing the sufficiency of her claim. *See Schnitzler*, 761 F.3d at 38, citing *Richardson*, 193 F.3d at 548.

The Court has entered summary judgment in favor of the defendant in the 2008 case, and it found that plaintiff did not prove religious discrimination in the 2003 denial of her request for religious compensatory time. *See Lurensky*, 1:08-cv-1199 [Dkt. # 109] at 23–26. Under the doctrine of *res judicata*, a claim previously adjudicated on the merits is foreclosed from being relitigated in a new action. Specifically, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). Because the 2008 case between these exact two parties involved the claim of religious discrimination arising out of the use of leave in 2003, and the Court, with jurisdiction, entered final judgment, plaintiff may not get a second bite at the apple in this case.

Moreover, to the extent that plaintiff is claiming that there was a later denial of religious compensatory time, she has failed to exhaust her administrative remedies with respect to that claim. "Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'" *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010), quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Before commencing a suit in federal court, a Title VII plaintiff must present a claim in an administrative complaint and afford the agency the opportunity to act on the complaint. *See generally* 42 U.S.C. § 2000e–16; 19 C.F.R. § 1614.106(a) (requiring complainant to file formal complaint within 180 days of alleged discriminatory event).

"These procedural requirements governing [a] plaintiff's right to bring a Title VII claim in federal court are not trivial." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 68 (D.D.C. 2007). "Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action

against the federal government," a court may not consider a discrimination claim that has not been exhausted.  *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003).

None of plaintiff's many complaints before the agency reference any religious discrimination allegations.  *See* Ex. A–I to Def.'s Mot. [Dkt. # 6-1, 6-2, 6-3, 6-4, 6-5, 6-6, 6-7, 6-8, 6-9].[7]  Therefore, because plaintiff did not present a claim of religious discrimination to the agency, she cannot raise it in federal court.  *See Stewart*, 352 F.3d at 426.

Even if she had exhausted administrative remedies on this claim, plaintiff has not stated a claim for religious discrimination in her Proposed Amended Complaint.  Although the D.C. Circuit has not articulated a framework for an employee's claim of failure to accommodate religious beliefs, other circuits require that a plaintiff must make a *prima facie* showing that "(1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of this belief; and (3) he was discharged for failing to comply with the conflicting employment requirement."  *See, e.g.*, *Daniels v. City of Arlington*, 246 F.3d 500, 506 (5th Cir. 2001); *see also Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006) (citing cases from the Second, Third, Fourth, Fifth, and Eighth Circuits); *Taub v. FDIC*, No. 96-5139, 1997 WL 195521, at *1 (D.C. Cir. Mar. 31, 1997) (citing, but not officially adopting, this test).

---

7       While a court may not typically consider matters outside the pleadings in evaluating a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56, documents that are referenced in, or are an integral part of, the complaint are deemed not outside the pleadings.  *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 70 (D.D.C. 2012). In this case, the plaintiff's discrimination claims filed in the EEOC proceedings are referenced in the complaint and therefore may be considered without converting the motion to dismiss into a motion for summary judgment.  *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 120 n.2 (D.D.C. 2011) (noting that where "the complaint necessarily relies upon the fact of the charge [of discrimination] and the letter [of determination] in pleading that administrative proceedings were pursued before this action was begun, . . . the motion need not be converted to one for summary judgment.").

Once plaintiff establishes a *prima facie* case, "the burden shift[s] to the employer to show that it was unable reasonably to accommodate [the plaintiff's] religious needs without undue hardship." *Daniels*, 246 F.3d at 506.

It is true that "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011), citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). But a plaintiff must nonetheless plead sufficient facts to show a plausible entitlement to relief. *Iqbal*, 558 U.S. at 683.

Other than the vague allegation of the "agency's subsequent actions," the allegation that defendant harassed and harmed her related to her request for religious leave, *see* Proposed Am. Compl. ¶¶ 9, 21, and the fact that plaintiff is Jewish and that FERC knows that she is Jewish, Pl.'s Suppl. Decl. [Dkt. # 12-1] at ¶ 5, plaintiff has not alleged any facts to show a plausible entitlement to relief under the applicable law.

Since the proposed new religious discrimination claim is barred by *res judicata* to the extent that it is based on the 2003 incident litigated in the 2008 case, any subsequent claim has not been administratively exhausted, and the Proposed Amended Complaint contains nothing but "labels and conclusions," s*ee Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555, amendment of the complaint to add a religious discrimination claim would be futile, and the motion to do so will be denied. For the same reasons, any Title VII claim predicated on discrimination based on religion in the original complaint, which says even less about religion than the Proposed Amended Complaint, will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Plaintiff's age discrimination claim does not state a plausible claim for relief.

While age discrimination claims should be construed liberally at the motion to dismiss stage, *see Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 62 (D.D.C. 2012), the Court cannot "create something out of nothing." *Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 56 (D.D.C. 2014).   Other than stating how old she is, *see* Proposed Am. Compl. ¶ 3, Compl. ¶ 3, plaintiff does not allege any facts that would support a finding that she was discriminated against based on her age.   In her opposition to the motion to dismiss, plaintiff observes that "there is reason to believe that age is implicitly a factor," Pl.'s MTD Opp. at 12, but she does not specify what reason that might be.   Plaintiff's declaration, which she cites as support for her age discrimination claim, only restates that she "believe[s] age is implicitly a factor" underlying some of the alleged discriminatory acts at issue in this case, and that "fairness warrants . . . an opportunity to discover information about the agency's actions and inactions."   Pl.'s Decl. ¶ 39.

*Iqbal* and *Twombly* make clear that to state a plausible claim for relief, a plaintiff must provide more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" or "'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 558 U.S. at 677–78, quoting *Twombly*, 550 U.S. at 544, 557.   Plaintiff's age-discrimination complaint is that she is 64-years-old, and that there is reason to believe her age must have been a factor in the workplace.   Those allegations – a textbook example of the kind of "naked assertions" prohibited by *Iqbal* – are insufficient to support the initiation of discovery, and so the Court will grant defendant's motion to dismiss plaintiff's age discrimination claims.

## III.    Plaintiff's discrimination and retaliation allegations do not state a claim because she fails to allege the necessary adverse employment actions.

In addition to the reference to age discrimination under the ADEA, plaintiff purports to bring claims alleging disability discrimination under the Rehabilitation Act, and retaliation under

Title VII.  Compl. ¶ 1.  Title VII makes it "unlawful . . . to discriminate against an individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  The ADEA adds age as a protected characteristic, *see* 29 U.S.C. § 623, and the Rehabilitation Act adds disability discrimination by federal employers to the mix.  *See* 29 U.S.C. §§ 791(b), (g); *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014).  Plaintiff also alleges that she was subjected to a hostile work environment, and that the agency's conduct was retaliatory, presumably in violation of the same statutes.

Assuming that plaintiff intended to bring a claim of discrimination based on disparate treatment, she was required to allege (1) that she suffered an adverse employment action (2) because of her protected status.  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  An adverse employment action requires a "tangible employment action," meaning "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  This requirement guards against "judicial micromanagement of business practices," *Mungin v. Katten, Munchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997), and "frivolous suits over insignificant slights." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).  Thus, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Id.*

To the extent that plaintiff is seeking to claim that the complained-of events were retaliatory, the standard for what is actionable is somewhat broader, but not without boundaries.  In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). Unlike in the discrimination context, the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *Burlington N.*, 548 U.S. at 67, and therefore, it does not require a materially adverse change in the terms and conditions of employment. *Steele v. Schafer*, 535 F.3d 689, 695–96 (D.C. Cir. 2008); *see also Bridgeforth v. Jewell*, 721 F.3d 661, 664 n.* (D.C. Cir. 2013) (explaining that retaliation "'encompass[es] a broader sweep of actions' than wrongful discrimination.").

But even in the retaliation context, the category of adverse events does not include trivial harms: "Actionable retaliation claims are limited to those where an employer causes '*material adversity*,'" and the plaintiff still must suffer some objectively tangible harm. *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 199 (D.D.C. 2011), quoting *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). The standard is an objective one that is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N.*, 548 U.S. at 69.

Plaintiff identifies a long list of actions that she claims generally were either discriminatory or retaliatory or both:[8]

- Denial of advanced leave after plaintiff's fall outside of FERC's Headquarters Building, and denial of a request to work from home to recover in July 2005. Compl. ¶¶ 9, 12.

---

[8] Defendant's motion to dismiss focuses on the absence of an actionable adverse action, but the Court notes that with the limited exception of the vague allegation in Proposed Amended Complaint ¶ 10 concerning the change in her hours, plaintiff's complaint includes few if any facts that would support a plausible inference that these incidents were animated by discrimination based on plaintiff's age, gender, religion, or disabilities, or that they were undertaken in retaliation for her prior protected activity.

- Revocation of the ability to work variable hours and/or changes to the duty hours that had been previously available as accommodations for plaintiff's disabilities.  Proposed Am. Compl. ¶¶ 9–10.

- Denial of requests to work from home in July and August 2005.  Compl. ¶ 9.

- Delayed response to requests for advanced sick leave in 2008, and a requirement that plaintiff provide medical documentation in support of her request.  Compl. ¶ 11.

- Denial of plaintiff's request to telework on two specific days in 2011.  Compl. ¶ 18.

- A "Fully Satisfactory" performance appraisal rating in 2005.  Compl. ¶ 10.

- Reassignment to the Office of Administrative Litigation where the work would include duties in hearing rooms with fluorescent lighting.  Compl. ¶ 10.

- Relocation of the Office of Administrative Litigation to a new physical location that was less accommodating than the Headquarters Building.  Compl. ¶¶ 13, 14.

- Denial of plaintiff's request to remove a holiday garland off of a handrail in FERC's lobby.  Compl. ¶ 12.

- Placement of plaintiff's personal information on an unrestricted FERC shared network drive.  Compl. ¶ 16.

- The IT Department's refusal to assist plaintiff in obtaining access leave information, and information about the new office space and security at the new building.  Compl. ¶ 15.

- Denial of plaintiff's request that her coworkers undergo disability sensitivity training.  Compl. ¶ 19.

But this is not plaintiff's first lawsuit arising out of her grievances at FERC, and the Court resolved all issues surrounding the 2005 performance evaluation, and the alleged revocation of plaintiff's variable work schedule, in its opinion in the 2008 case.  *See Lurensky*, 1:08-cv-1199, at 10–23 (plaintiff's variable work schedule); 42–44 (performance evaluation).  Applying the principles of *res judicata* set forth above, those issues cannot be relitigated here.  *See Smalls*, 471

F.3d at 192.[9] And none of the other incidents gives rise to a plausible claim of an adverse employment action.

### 1. Plaintiff's allegations about her leave and telework

Plaintiff claims that the agency informed her "[b]y memorandum dated July 27, 2005 . . . that she would not be granted advanced leave for other than medical reasons," Compl. ¶ 9, and that defendant delayed its response to a request for advanced sick leave three years later and required her to submit medical documentation. Compl. ¶ 11. She also complains that on specific occasions in 2005 and 2011, her requests to work from home were denied. Compl. ¶¶ 9, 18; Proposed Am. Compl. ¶ 9. While those decisions clearly caused plaintiff some consternation, there are no facts alleged that would indicated that they brought about any change, much less a "significant change," in plaintiff's employment status, and therefore, they are not actionable as adverse actions supporting a discrimination claim. *See Ellerth*, 524 U.S. at 742.

The disputes over leave and leave policy also do not constitute adverse events for claims of retaliation because those denials would not "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57. Although some courts in this district have found a denial of advanced sick leave to be an adverse action, those cases involved either a significant period of time – three to four weeks of sick leave, *Childs-Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 65 (D.D.C. 2005) – or a showing of financial harm arising out of the denial. *Diggs v. Potter*, 700 F. Supp. 2d 20, 43 (D.D.C. 2010). Plaintiff has not

---

9       Indeed the language in plaintiff's complaint suggests that plaintiff may have been recounting those incidents as background. *See* Proposed Am. Compl. ¶ 9 ("Plaintiff has complained that after she engaged in protected activity [d]efendant revoked her accommodations for disabilities . . . ."); Proposed Am. Compl. ¶ 10 ("After plaintiff engaged in protected activity at FERC, FERC revoked [p]laintiff's variable hours that were an accommodation for her disabilities and changed her duty hours. On the morning of July 20, 2005, [p]laintiff tried to arrive at her duty station consistent with FERC's changes in her duty hours but fell as she approached FERC's Headquarters Building.").

alleged that she experienced any financial harm as of the result of any ruling on a request for advanced leave, from the delay in the processing of the request in 2008, or from the need to submit medical documentation to support her request. *See Diggs*, 700 F. Supp. 2d at 41.  Moreover, she has not alleged facts from which one could draw the inference that the adverse ruling on a request for leave was material:  as the EEOC decision explains, the 2008 denied request was for less than three days of advanced sick leave and was therefore *de minimis.*  Ex. D to Def.'s Mot. at 2; s*ee Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.D.C. 2010) (explaining that, "assuming that the denial of advanced sick leave is actionable, the amount in question here" – three hours – "is too *de minimis* to be considered 'material' or 'significant'").

Each of plaintiff's complaints about her leave and telework fall into this *de minimus* and trivial threshold because they do not allege a significant change in plaintiff's pay or benefits.  *See id.*; s*ee also Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action.").

### 2.  Plaintiff's challenge to her reassignment, and to the physical relocation of the office

Plaintiff claims that defendant discriminated or retaliated against her when it reassigned her from the Office of the General Counsel to the Office of Administrative Litigation ("OAL") in 2005.  Compl. ¶ 10.  And plaintiff complains that the agency discriminated or retaliated against her when, five years later, OAL moved to a new building with different amenities than those available at the Headquarters Building.  Compl. ¶¶ 13, 14.  She adds in her Proposed Amended Complaint that the agency reassigned her to OAL with knowledge of her sensitivity to fluorescent

lighting.   Proposed Am. Compl. ¶ 11.[10]   These new claims do not state a cause of action for discrimination or retaliation.

Plaintiff has failed to plead any facts demonstrating that the transfer to OAL was accompanied by a reduction in pay or grade, and her dissatisfaction with the resources available to her at the new building do not alter the conditions of her employment.  *See Mungin*, 116 F.3d at 1557; *Ndonji v. InterPark, Inc.*, 768 F. Supp. 2d 264, 282 (D.D.C. 2011) (holding that a transfer to an undesirable office location is not a materially adverse employment action where it is not accompanied by a reduction in salary or benefits).  As the D.C. Circuit explained:

> A plaintiff who is made to undertake or who is denied a lateral transfer – that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered an objectively tangible harm.  Mere idiosyncrasies are not sufficient to state an injury.

*Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003), quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).  Because plaintiff has not alleged another "materially adverse consequence" associated with the reassignment or the transfer to the new office location, she has failed to state a claim for discrimination on those claims.

The Court recognizes that the Court of Appeals observed in *Pardo-Kronemann v. Donovan*, that the question of "[w]hether a particular reassignment of duties constitutes an adverse action . . . is generally a jury question."  601 F.3d 599, 607 (D.C. Cir. 2010), quoting *Czekalski v.*

---

10    The Court observes that in her successive complaints, plaintiff has advanced a series of varying positions on the question of whether she did or did not wish to remain in the Office of the General Counsel, and that her 2012 allegation that the transfer out was discriminatory is inconsistent with her insistence in her 2008 action the agency's *failure* to reassign her was discriminatory.  *See Lurensky*, 1:08-cv-1199, at 5–6 (describing plaintiff's efforts to be reassigned, and the agency's denial of those requests), 41–42 (finding that the denial of plaintiff's request for reassignment was not an adverse employment action).

*Peters*, 471 F.3d 360, 365 (D.C. Cir. 2007).  However, the court subsequently reaffirmed: "[w]hen a Title VII plaintiff rests a claim of materially adverse action on a transfer that does not involve loss of pay or benefits," a court must apply the test from *Brown*.  *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012).

Plaintiff has not alleged that the assignment to another nonsupervisory GS-15 attorney position involved significantly different responsibilities; nor has she alleged that the job at OAL caused any material harm.  She simply states that she was reassigned from her job in FERC's Office of the General Counsel to the Office of Administrative Litigation, and that OAL attorneys can be assigned to perform duties in hearing rooms with fluorescent light. Compl. ¶ 10. The proposed amended complaint adds only that this reassignment was made with knowledge of plaintiff's sensitivity to the lighting.  Proposed Am. Compl. ¶ 11.  With that, plaintiff has failed to allege that either the lateral move or the relocation of the OAL office in its entirety were materially adverse as that term has been interpreted by the applicable case law.[11]  Therefore, the allegations related to the transfer and move fail to state a claim, and the proposed amendment of the complaint would be futile.

### 3.    Plaintiff's remaining claims

Plaintiff also claims that FERC discriminated against her and retaliated against her when it denied her 2008 request to remove holiday decorations from a handrail in FERC's lobby.  Compl. ¶ 12 (plaintiff requested "that FERC have at least one stair hand rail in its lobby unencumbered by

---

11    Plaintiff does not seem to be asserting that the reassignment to OAL violated the Rehabilitation Act's failure to accommodate provision.   To state a claim for failure to accommodate, plaintiff must show the "fundamental element" that "the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).  The Proposed Amended Complaint is devoid of any allegations that plaintiff requested and was denied any accommodation related to the hearing rooms.  For that reason, even if plaintiff intended to assert a failure to accommodate claim in her complaint or proposed amended complaint, it would fail to state a claim.

a Christmas garland/bough wrapped around its banister."). She further alleges that FERC denied her request that her coworkers undergo disability sensitivity training. Compl. ¶ 19. She avers that her personal information should not have been available on an unrestricted network drive, Compl. ¶ 16, and she complains that she was denied IT assistance. Compl. ¶ 15.

Though a Christmas garland may have annoyed or inconvenienced the plaintiff, this allegation also fails to state a claim for discrimination or retaliation because it does not amount to an adverse employment action. The complaint does not state how the decoration or the decision to leave it in place affected the plaintiff, or why its removal was requested or necessary "as an accommodation." But even if one grants plaintiff the benefit of every doubt and infers that the garland in fact made the banister more difficult to grasp, records from the administrative investigation into this issue reflect that plaintiff could have entered the building through another entrance, which was located closer to her office, had no stairs or banisters, and lacked the offending decorations. *See* Ex. D to Def.'s Mot. at 4. Because the holiday garland did not affect the terms and conditions of plaintiff's employment, and the decision to leave it in place is not sufficiently adverse to chill a complainant's exercise of her rights, this circumstance does not give rise to a claim for discrimination or retaliation.[12]

Plaintiff next alleges that in March 2011, FERC placed her personal information on an internal network drive where it could be viewed by all FERC employees. Compl. ¶ 16. She further alleges that FERC discriminated against her when it failed to provide her with certain information about the duplication, custody, and control of her EEO files. Compl. ¶ 17. Plaintiff has failed to plead any facts to suggest that these incidents were animated by discrimination based on her age,

---

12     Moreover, neither the complaint nor the proposed amended complaint includes a claim for failure to accommodate under the Rehabilitation Act, and the factual predicate for such a claim is absent from the pleading in any event.

gender, religion, or disability, or as retaliation for protected activity.  Plaintiff has also not alleged

that either incident caused her any material harm, other than the kind of "purely subjective injuries,

such as . . . public humiliation, or loss of reputation, [that] are not adverse actions" in this Circuit.

*Holcomb*, 433 F.3d at 902, quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002).

Therefore, neither of those allegations state a claim for discrimination or retaliation.

Finally, plaintiff asserts that the departmental IT specialists declined to help her access

certain information on FERC's servers.  Compl. ¶ 15.  She also alleges that the agency

discriminated against her and retaliated against her by not ordering its employees to undergo

disability sensitivity training.  Compl. ¶ 19.  But the Court is not permitted to serve as a "super-

personnel department that reexamines an entity's business decisions," *Holcomb*, 433 F.3d at 897,

quoting *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999), and it cannot remedy

"common workplace shortfalls."  *Casey v. Mabus*, 878 F. Supp. 2d 175, 185 (D.D.C. 2012).

Because those circumstances did not modify the conditions of plaintiff's employment, and they do

not rise to the level of actions that would dissuade a reasonable employee from filing an EEO

complaint, the Court finds that they fail to state a claim.

## IV.    Plaintiff cannot assert a claim of "collective retaliation."

In plaintiff's opposition to defendant's motion to dismiss, she asserts that her

discrimination and retaliation claims are "implicit," and argues that her retaliation claim can be

proven based on the "totality of the Agency's actions over the course of years."  Pl.'s MTD Opp.

at 16.  While courts in this district have observed that under some circumstances, "a series of

independent actions taken together, none of which would be considered an adverse employment

action alone, can constitute an adverse employment action," *Turner v. Shinseki*, 824 F. Supp. 2d

99, 114–15 (D.D.C. 2011), they have been quick to add that "there is no bright line rule for

determining when such impact has occurred." *Dorns*, 692 F. Supp. 2d at 134, citing *Baloch v. Norton*, 517 F. Supp. 2d 345, 362–63 (D.D.C. 2007).  In the *Turner* case, the court concluded that even when viewed in the aggregate, the evidence fell far short of what is required to establish an adverse action in this Circuit. 824 F. Supp. at 116.  "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action . . . .  [I]f all employment decisions with a negative or adverse effect were actionable, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would otherwise form the basis of a discrimination suit." *Id.* at 115 (internal quotations omitted).  The court in *Baloch v. Norton* cautioned that "courts must exercise their judgment carefully on a case-by-case basis."  517 F. Supp. 2d at 363.  While that plaintiff had accumulated a long list of slights, the court decided that it could not "discern a collective retaliation claim greater than the sum of its parts." *Id.* [13]

The Court finds that even the combination of the disconnected trivialities and isolated actions with no material consequences presented here does not meet the threshold for stating a claim, particularly in the absence of any facts that would give rise to an inference of retaliatory intent. The record of the two actions in this Court reveals that dating back to 2003, plaintiff has blanketed the agency with an avalanche of lengthy EEO complaints, each containing myriad allegations, *see, e.g.*, Ex. E to Def.'s Mot. (plaintiff's July 2, 2010 EEO complaint arising from

---

[13]     The court in *Norton* also recognized that there are "a number of difficulties" in proving what the court described as an "incidents-collectively-viewed retaliation claim."  517 F. Supp. 2d at 362.  The court expressed concerns that such a claim would be virtually indistinguishable from a hostile work environment claim, and it noted that the plaintiff had not explained "how viewing the incidents collectively establishes any element of retaliation to greater effect than viewing them separately."  *Id.*

"some 80 issues, some of which are multi-part"), and the instant complaint does not point to any actionable adverse consequences that the GS-15 attorney has suffered as a result.

## V.     Plaintiff has failed to allege severe and pervasive conduct to support a hostile work environment claim.

Plaintiff also includes the words "hostile work environment" in the summary of her claim. *See*, *e.g.*, Compl. ¶ 1, 20.  To state a claim of a hostile work environment under Title VII, plaintiff must demonstrate that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult'" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), quoting *Meritor Sav. Bank*, *FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986). Examining such a claim requires both a subjective and an objective inquiry:  no violation is present "if the victim does not subjectively perceive the environment to be abusive" or if the conduct "is not severe or pervasive enough to create an objectively hostile or abusive work environment."  *Id.* at 21–22.  The same basic elements apply to a claim of hostile work environment based on disability, *see Bowden v. Clough*, 658 F. Supp. 2d 61, 79 n.12 (D.D.C. 2009), and a claim of hostile work environment based on age.  *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 187–89 (D.D.C. 2012).

To determine whether a hostile work environment exists, courts "look to 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris*, 510 U.S. at 23; *see also Baloch*, 550 F.3d at 1201. "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other."  *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).  The Supreme Court has made clear that the conduct must be so

extreme "to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  This "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary tribulations of the workplace." *Id.*

Plaintiff does not set out any of the claims in her complaint individually, so the hostile work environment claim is based on the same allegations that form the basis for her substantive discrimination and retaliation claims.  Other courts in this district have found it problematic when a plaintiff attempts to "'bootstrap' the same series of incidents alleged as retaliation 'into a broader hostile work environment claim.'" *Edwards v. EPA*, 456 F. Supp. 2d 72, 96 (D.D.C. 2006), quoting *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005).  But more important, plaintiff's allegations do not rise to the level of severe and pervasive discrimination.  The incidents alleged to have taken place over a six year period are dissimilar and disconnected in time, so they cannot be described as pervasive.  Nor are they severe:  none manifests a discriminatory bias of any sort, none can be characterized as abusive, and none involved a physical threat or posed an unreasonable impediment to plaintiff's performance of her duties.

**CONCLUSION**

For the reasons stated above, and pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff's complaint fails to state a claim upon which relief can be granted, and  it will therefore be dismissed.  Further, because plaintiff's proposed amended complaint would be futile, plaintiff's motion for leave to amend her complaint will be denied.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  March 1, 2016